## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IAN BAUSER, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>PORSCHE CARS NORTH AMERICA, INC. and DR. ING. H.C. F. PORSCHE AG,<br><br>        Defendants. | Case No.<br><br><br><br>DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT

Plaintiff Ian Bauser ("Bauser") brings this action against Defendants Porsche Cars North America, Inc. ("Porsche America") and its German parent company Dr. Ing. h.c. F. Porsche AG ("Porsche AG") (collectively "Defendants"), by and through his attorneys, individually and on behalf of all others similarly situated, and allege as follows:

### INTRODUCTION

1.      This case is about Porsche electric and plug-in hybrid vehicles that now take twice as long to charge as when sold. Defendants sell devices that charge their electric and plug-in hybrid vehicles' batteries. But after a

post-sale software change, the devices can only safely charge at half of their advertised rate. As a result, consumers who purchased the charging devices have paid for functionality that Defendants advertise but that their devices cannot safely provide. Defendants knew that their software change would cause this issue, but have not provided their customers with a remedy to this problem, and thus their conduct violates federal and state consumer-protection laws.

2.      Defendants sell two devices for home charging their electric and plug-in hybrid cars: the Porsche Mobile Charger Plus ("PMC+") and the Porsche Mobile Charger Connect ("PMCC"). Both require an industrial electrical feed outlet, capable of providing 40 amperes of current, to reach a full charge at the advertised speed of 9.5 to 10.5 hours. The charging devices come with an industrial supply cable to connect the charger to the feed outlet.

3.      Consumers began to notice that the devices were overheating and alerted Defendants. The overheating caused damage to the outlet and created a potential fire hazard.

4.      Defendants deployed what they called an update: they asked consumers to bring their PMC+ and PMCC charging devices to dealerships, where technicians would change the charging device settings to cut the maximum output current in half. Defendants also released a software update

for the chargers with the same effect (both measures will be referred to as the "Charger Restriction"). These steps caused vehicle charging times to double, limiting consumers' ability to use their cars when needed and as advertised.

5.    Plaintiff Ian Bauser is one such consumer. He relied on Defendants' statements about the ease, convenience, and speed of charging his Porsche electric car at his home when purchasing the PMCC (and the car itself). But after the Charger Restriction, his car's charging time approximately doubled. Plaintiff Bauser is left with a charging device that does not work as promised and a vehicle that he cannot use as he originally intended.

6.    Defendants have made no effort to recall, repair, replace, or otherwise return the PMC+ and PMCC devices to their full functionality.

7.    Defendants have sold tens of thousands of defective PMC+ and PMCC devices. Plaintiff Bauser's story is representative of similarly situated device purchasers and lessees.

8.    Because of Defendants' unlawful conduct, Plaintiff Bauser and others similarly situated have incurred damages, including by purchasing a charging device advertised with performance specifications that it cannot safely meet in practice. Defendants' conduct thus violates law protecting consumers from unfair and deceptive business practices and from breaches of

warranties. Plaintiff Bauser, on behalf of himself and those similarly situated, seeks remuneration as well as injunctive and declaratory relief.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332(d) because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and this matter is a class action in which certain class members are citizens of states other than Defendants' states of citizenship. Moreover, diversity jurisdiction exists because Defendant Porsche Cars North America, Inc. is incorporated in Delaware, with its principal place of business in Atlanta, Georgia; Defendant Dr. Ing. h.c. F. Porsche AG is a German corporation, with its principal place of business in Stuttgart, Germany; and Bauser, a New York citizen, resides in Huntington, New York.

10.     This Court has supplemental jurisdiction over Bauser's state-law claims under 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over Defendants because they conduct substantial business in this District, have sufficient contacts with this District, and otherwise purposely avail themselves of the markets in this District by marketing and working with their authorized dealerships to sell vehicles and vehicle accessories in this District. Defendant Porsche

4

Cars North America, Inc. also maintains its principal place of business in this District.

12.     Venue is proper under 28 U.S.C. § 1391 because Defendants transacted business in this District and are subject to the Court's personal jurisdiction. In addition, a substantial part of the events giving rise to the claims Plaintiff Bauser and members of the Class assert occurred in this District.

## PARTIES

13.     Plaintiff Ian Bauser is a resident of Huntington, New York. He purchased a 2022 Porsche Taycan GTS and a PMCC from a Porsche authorized dealer in New York, New York.

14.     Defendant Porsche America is incorporated in Delaware with its principal place of business located at 1 Porsche Drive, Atlanta, Georgia 30354. Porsche America is a wholly owned US subsidiary of Porsche AG. Porsche America marketed and sold its Porsche Mobile Charge Plus and/or Porsche Mobile Connect Charger products to Bauser and other Class Members.

15.     Defendant Porsche AG is a German corporation with its principal place of business in Stuttgart, Germany. Porsche AG designs, develops, and manufactures luxury automobiles. During the Class Period, Porsche AG

manufactured or was responsible for the manufacture of the PMC+ and PMCC products.

## FACTUAL ALLEGATIONS

### The Porsche Mobile Charger Plus and Porsche Mobile Charger Connect

16.   Since the 2020 model year, Defendants have manufactured, marketed, and sold through their authorized dealerships a line of Porsche Taycan electric vehicles. The line contains several models of sedans and wagons, each of which has a fully electric drivetrain and requires regular charging. For the 2023 model year, for instance, Defendants offer ten variations of the Taycan, with starting prices ranging from $86,700 for the base Taycan to $190,000 for the Taycan Turbo S Cross Turismo.[1]

17.   Defendants also manufacture, market, and sell through their authorized dealerships plug-in "E-Hybrid" versions of other cars in their lineup. Defendants offer six E-Hybrid variations of the Cayenne, with starting prices ranging from $86,500 for the base crossover SUV to $173,800 for the Cayenne Turbo S E-Hybrid Coupe,[2] and ten variations of the

---

[1] Porsche Cars N. Am., Inc., *Taycan* (2022), https://www.porsche.com/usa/models/taycan/ [archived copy].
[2] Porsche Cars N. Am., Inc., *Cayenne* (2022), https://www.porsche.com/usa/models/cayenne/cayenne-models/cayenne/ [archived copy].

Panamera, with starting prices from $109,900 for the base Panamera E-Hybrid sedan to $200,400 for the Panamera Turbo S E-Hybrid Sport Turismo.[3]

18.    In their marketing, Defendants tout the ease of charging the Taycan at home. They advertise to consumers that "[e]lectric cars can not only be charged at external charging stations, but also—and above all—at home."[4] Their "[e]xperience with Porsche Taycan customers shows that in practice, [home charging] accounts for 80 per cent [sic] of all charging operations."[5] Their marketing for their plug-in E-Hybrid models promises similarly smooth experiences.[6]

19.    But while "[c]harging is possible in principle through a normal household socket," "due to the low power and the long charging time that

---

[3] Porsche Cars N. Am. Inc., *Panamera* (2022), https://www.porsche.com/usa/models/panamera/panamera-models/panamera/ [archived copy].

[4] Porsche Cars N. Am., Inc., *Recharge Your Batteries at Home* (2022) ["*Recharge Your Batteries*"], https://newsroom.porsche.com/en/products/porsche-electromobility-charging-infrastructure/charging-at-home.html [archived copy].

[5] *Id.*

[6] *See* Porsche Cars N. Am., Inc., *Charging Porsche Plug-In Hybrid Models* (2022), https://www.porsche.com/international/aboutporsche/e-performance/charging-phev/ [archived copy].

results, Porsche offers a comprehensive service and advises its customers on optimal home charging."[7]

20.    As part of this home-charging offering, Defendants provide a charger with the Taycan and E-Hybrid models called the Porsche Mobile Charger Plus ("PMC+"). They also offer owners and lessees an optional charger called the Porsche Mobile Charger Connect ("PMCC"), which is a "smart charger with additional features."[8] It provides the same functionality as the PMC+ but adds a touchscreen and WiFi connectivity.[9]

21.    Defendants offer an express warranty for the PMC+ and PMCC when "purchased from and installed by an authorized Porsche dealer" that covers the devices for two years when they are "defective in material or workmanship under normal use."[10]

22.    While the PMC+ is sold with the Taycan and E-Hybrid models, Defendants' authorized dealers typically sell replacements for at least $1,995,

---

[7] _Recharge Your Batteries_.

[8] Porsche Cars N. Am., Inc., _Charging All-Electric Porsche Models_ (2022) ["_Porsche on Charging_"], https://www.porsche.com/usa/aboutporsche/e-performance/charging-bev/ [archived copy].

[9] _Id._

[10] Porsche Cars N. Am., Inc., _2022 US Taycan Warranty Manual_ 14–17 (2022) https://files.porsche.com/filestore/download/usa/none/porscheservice-warrantyandvehicleinformation-warranty-2022taycanwarrantymanual/default/72465700-3809-11ed-80f7-005056bbdc38/2022-US-Taycan-Warranty-Manual.pdf [archived copy].

plus the cost of a supply cable (generally about $120).[11] Meanwhile, Defendants' authorized dealers typically sell the PMCC for as much as $2,495, plus the cost of a supply cable.[12]

23.    For the Taycan, Defendants market the PMC+ and PMCC as supplying a "full charge in up to 9.5 [or] . . . 10.5 hours," depending on the car's battery:[13]



**Products for charging at home.**

With Porsche charging equipment, you can charge your electric vehicle at home not only faster, but also more conveniently.

**Porsche Mobile Charger Connect**

Smart charger with additional features.

- Charging time: full charge in up to 9.5 hours with the Performance Battery/ 10.5 hours with the Performance Battery Plus Enables wi-fi connectivity
- Equipped with a 5-inch touch display
- Level 1 (120V) and Level 2 (240V NEMA 14-50) capable.Use: at home or on the road
- Product variant:9.6 kW
- Compatibility: all Porsche plug-in hybrid and electric vehicles
- Required cables and basic wall mount are included

• • •

---

[11] *See, e.g.,* Suncoast Parts, *Porsche Mobile Charger Plus* (2023), https://www.suncoastparts.com/product/SKUHYBCHA.html [archived copy]; Suncoast Parts, *Cable - Wall to Charger (NEMA 6-50)* (2022), https://www.suncoastparts.com/product/skuhybg2nema650.html [archived copy].

[12] *See, e.g.,* Suncoast Parts, *Porsche Mobile Charger Connect* (2022), https://www.suncoastparts.com/product/skutaycha.html [archived copy].

[13] *Porsche on Charging.*

24.    The PMC+ and PMCC can charge at two different rates, Level 1 and Level 2.[14] Level 1 charging uses a 120-volt outlet, the standard in American homes.[15] Level 2, however, uses a 240-volt outlet, which requires an industrial electrical socket.[16] Defendants suggest using a NEMA 14-50 socket,[17] which is not standard in American homes. Industrial-outlet installation is an additional cost not included with the Taycan or an E-Hybrid model.

25.    Defendants state that the PMC+ and PMCC can draw 40 amperes of electric current from a home's 240-volt outlet.[18] That amount of current is only available by using Level 2 charging through an industrial feed socket. While a Taycan or E-Hybrid owner or lessee can charge her car using a standard domestic socket, which typically provides 15 or 20 amperes of

---

[14] *Id.*; *see generally* Joe Wiesenfelder, *What Is Level 1, 2, 3 Charging?* (Cars.com July 26, 2021), https://www.cars.com/articles/what-is-level-1-2-3-charging-437766/ [archived copy].

[15] *Porsche on Charging.*

[16] *Id.*; Porsche Cars N. Am., Inc., *Porsche Mobile Charger Operating Manual* 17 (May 2020) ["*PMC Manual*"], https://files.porsche.com/filestore/download/multimedia/none/e-performance-faq-mobile-charger-connect-row/default/e34145f9-d53c-11e9-80c5-005056bbdc38/Porsche-Mobile-Charger-Connect-Operating-Manual.pdf [archived copy].

[17] *Porsche on Charging*; *PMC Manual* at 7.

[18] *PMC Manual* at 7.

current, Porsche admits that there will be "reduced charging power," significantly lengthening the charging time.[19]

26.    To reach a full charge in 9.5 to 10.5 hours, as Defendants advertise, a Taycan owner or lessee must employ Level 2 charging using a 240-volt industrial outlet capable of dispensing 40 amperes of current. On the contrary, if she employs Level 1 charging using a 120-volt outlet with a standard socket, the car will take about twice as long to completely charge.

27.    The PMC+ and PMCC each come with a supply cable that connects the device to an industrial electrical outlet.[20] Defendants tell Taycan owners and lessees that "[f]or regular charging with optimum charge speed," they should "use only the supply cable[]" included with the PMC+ or PMCC.[21]

28.    Accordingly, many if not most Taycan and E-Hybrid owners and lessees choose to install an industrial 240-volt outlet capable of dispensing 40 amperes of current in their homes, motivated by Defendants' promises of a feasibly short charging time. As one Taycan owner put it:

> I've known many new EV owners that started out
> with a . . . plan [to use a 120-volt outlet] - I don't know
> any of them that haven't subsequently upgraded to at

---

[19] *Id.*
[20] *Id.* at 5.
[21]

least a 240 volt 30 amp circuit for EV charger. . . . [Y]ou're giving up one of the major advantages of owning an EV - having it full every morning when you get in it [be]cause it charged over night like your cell phone and is full every morning . . . . [Y]ou wouldn't buy a laptop without wifi, I'd re[c]comend you don't buy an EV without a solid charging plan for your daily usage.[22]

29.    In internal documents for authorized dealers and technicians, Defendants state that "[t]he 'domestic' (125V) supply cable is provided for emergency use only, and should not be used by customers for daily home charging."[23] "When used," Defendants warn, "it is recommended to limit 125V charging to a maximum of approximately 12 hours."[24] That is far short of the time necessary to reach a full charge, as Defendants acknowledge: "[c]harge only to a minimum needed to get to a nearest High-Power Charger (HPC) or DC Charger for recharging."[25] Defendants even instruct authorized dealers

---

[22] @daveo4porsche, *Re: Taycan Charging on 120v?*, Rennlist – Porsche Discussion Forum (June 30, 2020), https://rennlist.com/forums/taycan/1201491-taycan-charging-on-120v.html#post16738847 [archived copy].

[23] Porsche N. Am. Inc., *Technical Information: WMP2 – Reworking Charging Electronics (Porsche Mobile Charger) (Workshop Campaign)* 2, NHTSA Safety Issue ID No. MC-10219395-0001 (Aug. 19, 2022) ["*Aug. 19 Bulletin*"], https://static.nhtsa.gov/odi/tsbs/2022/MC-10219395-0001.pdf.

[24] *Id.*

[25] *Id.*

and technicians to "[p]lease discuss installation and use of a suitable 250V circuit with all customers."[26]

30.    Taycan and E-Hybrid owners and lessees choose to purchase or lease the cars in part because they expect to be able to charge them in a reasonable amount of time, as Defendants' marketing and technical materials state. The inability to rapidly charge a Taycan or E-Hybrid model at home severely hampers the owner or lessee's ability to use and enjoy the car on a regular basis.

**Defendants Learned That the PMC+ and PMCC
Devices Were Dangerously Overheating**

31.    No later than 2022, Porsche owners and lessees started noticing that the PMC+ and PMCC devices often became extremely hot to the touch while charging. For some, the supply cables and plugs became so hot that they melted the industrial electrical outlets they had installed.

32.    For instance, on or about September 1, 2022, one Taycan owner attempted to use the included supply cable with a NEMA 14-50 outlet to

---

[26] *Id.*

charge at 40 amperes, as Defendants instructed, only to find that it melted the outlet and burned the wall behind it:[27]



33.    Similarly, on or about January 3, 2023, another Taycan owner found that the included supply cable, plugged into a NEMA 14-50 outlet, had melted both the outlet and the cable's plug:[28]

---

[27] @AZ Taycan for John, *Re: [North America] - This Is Getting Embarrassing - Porsche Nerfing/Neutering the PMCC via OTA Update?*, TaycanForum (Oct. 2, 2022), https://www.taycanforum.com/forum/threads/north-america-this-is-getting-embarrassing-porsche-nerfing-neutering-the-pmcc-via-ota-update.12791/page-21 [archived copy].
[28] @curtvass, *Porsche Mobile Charger – Recall, TaycanForum* (Jan. 4, 2023), https://www.taycanforum.com/forum/threads/porsche-mobile-charger-recall.14275/post-214735 [archived copy].

 

34.    Defendants were aware of concerns about the PMC+ and PMCC overheating since at least August 19, 2022, when they circulated a service bulletin to their authorized technicians explaining the problem.[29] Over the next month, Defendants updated the bulletin several times, with the most recent iteration containing technical information published September 21, 2022.[30]

---

[29] *Aug. 19 Bulletin* at 2.

[30] Porsche N. Am. Inc., *WMP2 - Reworking Charging Electronics (Porsche Mobile Charger) (Workshop Campaign)*, NHTSA Safety Issue ID No. MC-10222530-0001 (Sept. 21, 2022) ["*Sept. 21 Bulletin*"], https://static.nhtsa.gov/odi/tsbs/2022/MC-10222530-0001.pdf. Porsche later released a nontechnical bulletin, pointing to a not publicly available "Customer Q&A" for dealers to use "when speaking with customers about vehicles and chargers affected." Porsche N. Am. Inc., *WMP2 Workshop Campaign - Rework Charging Electronics (Porsche Mobile Charger)*, NHTSA

35.    Defendants' bulletin stated: "The surface of the charger and associated equipment can become very hot under normal use. This is normal and not an indication of a defect in the charger."[31]

36.    Instead of acknowledging the defect, Defendants' bulletin placed the blame on customers' electrical infrastructure:

> If the electrical receptacles/outlets are not of sufficient quality, higher temperatures can occur in the receptacle when charging the vehicle using the supplied charging hardware (e.g. Porsche Mobile Charger). This can result in thermal damage to the receptacle and associated wiring. Low quality NEMA receptacle use or improper installation are not an indication of a defect in the vehicle or Porsche charging hardware.[32]

37.    Defendants also knew of the problem, via owners' and lessees' complaints forwarded from dealerships, as early as August 2020, or through their own internal testing. One owner, for instance, contacted both Porsche America and his dealership about this issue on or before August 11, 2020.[33] The dealership passed on the response it received from Porsche America:

---

Safety Issue ID No. MC-10227478-0001 (Nov. 22, 2022), https://static.nhtsa.gov/odi/tsbs/2022/MC-10222530-0001.pdf.
[31] *Sept. 21 Bulletin* at 2.
[32] *Id.*
[33] @Toby Pennycuff, *Re: NEMA 14-50 Supply Cable Heat Data*, TaycanForum (Aug. 11, 2020), https://www.taycanforum.com/forum/threads/nema-14-50-supply-cable-heat-data.1940/page-8#post-27225 [archived copy].

They are aware of the cables heating up during charging and are looking into it with PAG. They said that the cords are certified as an assembly with the chargers however they understand the concern of the cable getting quite warm. They suggested turning the charger current down to 30 amps to help with the cable heating up.[34]

### Defendants Responded by Limiting the PMC+ and PMCC's Functionality but Continued to Advertise Full Functionality

38.    But Defendants did not offer to replace or otherwise repair the devices. Instead, they sent a communiqué to Taycan and plug-in E-Hybrid owners and lessees instructing them to bring their PMC+ or PMCC to a Porsche dealer for an "update." One Taycan owner, for instance, received the following email from Porsche America:

> Porsche Cars North America, Inc. (PCNA) has developed an update to the Porsche Mobile charger for your E-hybrid or Taycan vehicle. We are contacting you because this update is now available to you free at your Porsche Dealer.
>
> **What is the issue?**
>
> High temperatures can occur in the plug socket when charging the vehicle using the Porsche Mobile Charger in conjunction with NEMA industrial plugs, due to the higher charging current. In certain situations, this can lead to heat damage to the electrical socket.

---

[34] *Id.*

17

**What will Porsche Do?**

Your Porsche Dealer will limit the default current charging setting to 50% on your Porsche Mobile Charger and affix a warning sticker to your Porsche Mobile Charger using the NEMA standard. You will also be given a supplement to the Owner's Manual.

Thank you for your patience and allowing us to help maintain continued satisfaction with your vehicle.

**What should you do?**

Please contact your local Porsche dealer as soon as possible to schedule an appointment to have your vehicle's mobile charger updated at NO CHARGE TO YOU.[35]

39.     Defendants' bulletin specified the steps technicians should take when implementing the Charger Restriction. Of note is its instruction to "[l]imit charging current at the charging electronics initially to 50% in conjunction with the industrial supply cable."[36] After changing the PMC+ or PMCC's settings, the technician was then instructed to place a warning sticker on the charger's main unit and give the customer a supplement to the owner's manual.[37]

---

[35] @tomdfw1, *Re: Need a Class Action Lawsuit - Porsche Mobile Charger*, TaycanForum (Sept. 29, 2022), https://www.taycanforum.com/forum/threads/need-a-class-action-lawsuit-porsche-mobile-charger.12860/post-191205 [archived copy].

[36] *Sept. 21 Bulletin* at 1.

[37] *Id.* at 1, 5–9.

40.     Defendants also published a software update that instituted the same charging limitations.[38]

41.     The Charger Restriction changed the default configuration of the PMC+ or PMCC to accept only 20 amperes of current. As discussed above, the PMC+ and PMCC require 40 amperes of current to utilize the industrial electrical infrastructure that many owners and lessees install. More importantly, the PMC+ and PMCC require 40 amperes of current to achieve the charging times and efficiency that Defendants' marketing and technical materials assert that owners and lessees can expect for regular electric-vehicle use.

42.     Because the PMC+ and PMCC were adjusted to accept only half the possible current after the Charger Restriction, the vehicles' charging time approximately doubled from the advertised 9.5 to 10.5 hours to upwards of 20 hours.

---

[38] *See* @daveo4EV, *Re: [North America] - this is getting embarrassing - Porsche nerfing/neutering the PMCC via OTA update?*, TaycanForum (Sept. 25, 2022), https://www.taycanforum.com/forum/threads/north-america-this-is-getting-embarrassing-porsche-nerfing-neutering-the-pmcc-via-ota-update.12791/post-190180 [archived copy].

43.    Defendants continue to advertise the original rapid charging times, which rely on the PMC+ and PMCC drawing at least 40 amperes of current as it did before the Charger Restriction.[39]

44.    Defendants have not announced a recall, repair, replacement, or other program to return the PMC+ and PMCC to their full functionality and charging speed.

<u>Porsche Owners and Lessees Complained about</u>
<u>Greatly Increased Charging Times</u>

45.    Unsurprisingly, after receiving the Charger Restriction, owners and lessees began to express their discontent with the extended charge time. Many turned to specialized online forums where Porsche owners, lessees, experts, and enthusiasts regularly discuss Porsche cars. There, questions and complaints about the PMC+ and PMCC abound, particularly after the Charger Restriction.

46.    Below is a representative sample of consumer complaints about the PMC+ and PMCC:

| @tomdfw1 September 22, 2022 | I received this email from Porsche. This is ridiculous they want me to throttle my $2500 charger to half speed and act like it's no big deal. I paid 1800 to have a 50A circuit installed |
|---|---|

---

[39] *See, e.g.,* *Porsche on Charging*.

| | |
|---|---|
| | because they recommended this. And now they want us to run it at 20A?<br><br>That's like selling a 600 HP 911 and telling the buyer to disable 3 cylinders and one of the turbos or the car may overheat.<br><br>Porsche needs to refund or replace these faulty units or I hope someone starts a class action lawsuit![40] |
| **@TYKHAAAN**<br>September 24, 2022 | Mine indeed updated today and I'm not happy. . . . I plan to head to my dealer this week with the Porsche EVSE and demand a refund on it. That thing is insanely expensive and now it's by far become the worst product on the market for level 2 (barely) charging. Totally unacceptable…[41] |
| **@madeyong**<br>September 28, 2022 | Total joke. I would switch EVSE's in a heartbeat but I invested in the charging dock/cabinet and would need to remove that from my garage wall and then have holes where that was mounted. Not a pretty sight. Extremely disappointed and dissatisfied with their approach here.[42] |

---

[40] @tomdfw1, *Re: Need a Class Action Lawsuit - Porsche Mobile Charger*, TaycanForum (Sept. 29, 2022), https://www.taycanforum.com/forum/threads/need-a-class-action-lawsuit-porsche-mobile-charger.12860/post-191205 [archived copy].

[41] @TYKHAAAN, *Re: [North America] - This Is Getting Embarrassing - Porsche Nerfing/Neutering the PMCC via OTA Update?*, TaycanForum (Sept. 24, 2022), https://www.taycanforum.com/forum/threads/north-america-this-is-getting-embarrassing-porsche-nerfing-neutering-the-pmcc-via-ota-update.12791/post-190047 [archived copy].

[42] @madeyong, *Re: [North America] - This Is Getting Embarrassing - Porsche Nerfing/Neutering the PMCC via OTA Update?*, TaycanForum (Sept. 28, 2022), https://www.taycanforum.com/forum/threads/north-america-this-is-

| | |
|---|---|
| **@ThePaddyWan** September 29, 2022 | Received the email to bring in the PMCC like others have. I'd much rather they buy back the unit if it can't perform as advertised. Updating it to charge at 50% of advertised and slapping on a sticker isn't a customer centric solution. In fact, it's to protect Porsche.[43] |
| **@BMonte13** September 29, 2022 | Love my Taycan….but they'll gladly reduce the efficiency of my charger by 50% for free? Thanks? Wait…Say what?[44] |
| **@Skier** September 30, 2022 | So my 2020 TTurbo just got back from the "BIG" update. They knew about my charger issue and simply reduced the amps so it now charges more slowly at home. NOT what I paid for when I bought the car and believe Porsche owes me some sort of compensation: either a refund for the charger or replace it with one that doesn't overheat and works as advertised.[45] |
| **@Kip** October 1, 2022 | So 8 weeks ago, my charger started heating up. I took it to my local dealer . . . and they said they would order me a new one. Still have not |

---

getting-embarrassing-porsche-nerfing-neutering-the-pmcc-via-ota-update.12791/post-190792 [archived copy].

[43] @ThePaddyWan, *Re: [North America] - This Is Getting Embarrassing - Porsche Nerfing/Neutering the PMCC via OTA Update?*, TaycanForum (Sept. 29, 2022), https://www.taycanforum.com/forum/threads/north-america-this-is-getting-embarrassing-porsche-nerfing-neutering-the-pmcc-via-ota-update.12791/post-191101 [archived copy].

[44] @BMonte13, *Re: [North America] - This Is Getting Embarrassing - Porsche Nerfing/Neutering the PMCC via OTA Update?*, TaycanForum (Sept. 29, 2022), https://www.taycanforum.com/forum/threads/north-america-this-is-getting-embarrassing-porsche-nerfing-neutering-the-pmcc-via-ota-update.12791/post-191104 [archived copy].

[45] @Skier, *Re: Need a Class Action Lawsuit - Porsche Mobile Charger*, TaycanForum (Sept. 30, 2022), https://www.taycanforum.com/forum/threads/need-a-class-action-lawsuit-porsche-mobile-charger.12860/post-191373 [archived copy].

| | received it. I have called, emailed several times. They said its under warranty and coming. And now I get this email saying its a known issue. Ridiculous[46] |
|---|---|
| **@JRNJTAYCAN** October 4, 2022 | I took mine off the wall and replaced it with a third party charger so I can use my 50amp breaker with no issues! The stock charger is now just large paper weight for me! I do not plan to use it unless they figure out a fix other than cutting the amperage in half![47] |
| **@Scotty** October 11, 2022 | My dealer did the update 2 weeks ago and never told me the time to charge my car would be twice as long. I received a letter from Porsche today stating the 50% reduction. I also never received an update to the manual per the letter. I emailed my service advisor and he said I could change the settings on the charger but Porsche does not recommend I do so. . . . Porsche is no different. Why should we accept a defective product and not force the company to fix it.? When the last time Porsche did the right thing without being forced by the gov't or a lawsuit to do so?[48] |
| **@daveo4EV** | I think the really issue here is Porsche is |

---

[46] @Kip, *Re: Need a Class Action Lawsuit - Porsche Mobile Charger*, TaycanForum (Oct. 1, 2022), https://www.taycanforum.com/forum/threads/need-a-class-action-lawsuit-porsche-mobile-charger.12860/post-191653 [archived copy].

[47] @JRNJTAYCAN, *Re: Need a Class Action Lawsuit - Porsche Mobile Charger*, TaycanForum (Oct. 4, 2022), https://www.taycanforum.com/forum/threads/need-a-class-action-lawsuit-porsche-mobile-charger.12860/post-192357 [archived copy].

[48] @Scotty, *Re: Need a Class Action Lawsuit - Porsche Mobile Charger*, TaycanForum (Oct. 11, 2022), https://www.taycanforum.com/forum/threads/need-a-class-action-lawsuit-porsche-mobile-charger.12860/post-194120 [archived copy].

| October 12, 2022 | trying to weasel out of a product recall w/refund - I frankly don't mind them admitting the PMCC/PMC+ it not up to the task - the product is effectively defective for the North American market - they screwed up - they should take it like the big bad corporation they are and take the products back - provide some form of compensation and come forward with a recommendation for an EVSE that meets the bill.

all this teeth nashing is them trying to not admit the PMC+/PMCC isn't suitable for it's published use case and they don't want to be on the hook for the cost of that screw up.

they screwed up the design - they know it - and yet they don't want to bear the cost of that problem.

honestly it is embarrassing in my opinion.[49] |

### Plaintiff Bauser Purchased a Falsely Advertised PMCC from Defendants

47.    On April 30, 2022, Plaintiff Bauser purchased a new 2022 Taycan GTS, bearing VIN WP0AD2Y1XNSA59265, for a total price of $176,744.34 from Manhattan Motorcars, an authorized Porsche dealer located at 711 Eleventh Street, New York, New York 10019. That total included a PMCC priced at $1,120, as shown on the vehicle's Monroney sticker:

---

[49] @daveo4EV, *Re: Need a Class Action Lawsuit - Porsche Mobile Charger*, TaycanForum (Oct. 12, 2022), https://www.taycanforum.com/forum/threads/need-a-class-action-lawsuit-porsche-mobile-charger.12860/post-194369 [archived copy].



48.    Plaintiff Bauser decided to purchase a Taycan in large part because he valued the ease, convenience, and speed of charging it at his home.

49.    Plaintiff Bauser had an industrial electrical outlet installed at his home by a licensed electrician. He did so because he understood that Porsche recommended this in order to achieve Porsche's advertised charging rate, which was material to his decision to purchase the Taycan.

50.    Plaintiff Bauser typically charged the Taycan using the PMCC overnight each night, and generally found that charging times were consistent with the speed Porsche advertised.

51.    Plaintiff Bauser owned and drove the Taycan without any charging issues for several months. He adhered to the recommended service schedule, with all maintenance performed at a Porsche dealership.

52.    Plaintiff Bauser received a letter from Porsche America, like the email described above, directing him to bring the PMCC to the dealership for the Charger Restriction. He did so on December 27, 2022.

53.    The dealership's staff told him that they might just apply a warning label to the PMCC, but not reduce its charging capacity. However, a Porsche technician changed the PMCC's settings to accept only 20 amperes of current, attached a warning sticker to the device, and gave Plaintiff Bauser a supplement to the owner's manual.

54.    After the Charger Restriction, Plaintiff Bauser noticed that the Taycan's charging time approximately doubled. The slower-than-promised charging interfered with and limited Plaintiff Bauser's use of the Taycan.

55.    Had the defect in the PMCC been disclosed, Plaintiff Bauser would not have purchased it or would have been only willing to pay a lower price.

26

56.    To date, Plaintiff Bauser has not received any further notice from Defendants recalling, offering to repair or replace, or otherwise addressing the PMCC's less than promised charging capability.

## CLASS ACTION ALLEGATIONS

57.    Plaintiff Bauser brings this action on his own behalf and as a class action under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the following class of persons (the "Class"):

> All persons or entities who purchased or leased a new Porsche vehicle equipped with a Porsche Mobile Charger Plus or a Porsche Mobile Charger Connect in New York State.

58.    Excluded from the Class are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors, wholly or partly owned, and subsidiaries and affiliates; proposed counsel for the Class and their employees; the judicial officers and associated court staff assigned to this case and their immediate family members; all persons who make a timely election to be excluded from the Class; and governmental entities.

59.    Certification of Plaintiff Bauser's claims for class-wide treatment is appropriate because Plaintiff Bauser can prove the elements of his claims

on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

60.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

61.     <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are numerous and geographically dispersed across New York and the United States such that individual joinder of all members of the Class is impracticable. Defendants have sold thousands of PMC+ and PMCC units to buyers in New York and across the country. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

62.     <u>Commonality and Predominance</u>. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Class, including, without limitation:

     a. The nature, scope, and operations of Defendants' wrongful practices;

     b. Whether Defendants knew the PMC+ and PMCC did not possess the advertised safe charging capability;

c.  Whether Defendants' advertising, marketing, product packaging, and other promotional materials were untrue, misleading, or reasonably likely to deceive a reasonable consumer;

d.  Whether Defendants knew that their representations and/or omissions regarding the PMC+ and PMCC's charging capability were false or misleading, but continued to make them;

e.  Whether Defendants' failure to disclose, in its advertising and marketing materials, the PMC+ and PMCC's true safe charging capability is a material fact;

f.  Whether Defendants' failure to disclose the PMC+ and PMCC's true safe charging capability in their advertising and marketing materials confused consumers who were comparing different electric and plug-in hybrid cars and their chargers manufactured by others;

g.  Whether the value of the PMC+ and PMCC is decreased based on the actual available charging capability;

h.  Whether Defendants' conduct constituted a breach of express warranty;

i.  Whether Defendants' conduct constituted deceptive acts or practices under N.Y. Gen. Bus. Law § 349;

j.  Whether Defendants' conduct constituted false advertising under N.Y. Gen. Bus. Law § 350;

k.  Whether Defendants' conduct constituted unjust enrichment under New York law;

l.  Whether Defendants' conduct constituted grounds for a money-had-and-received claim under New York law;

m.  Whether Defendants' conduct constituted fraudulent or negligent misrepresentation under New York law;

n.  Whether Defendants' conduct constituted fraudulent concealment under New York law;

o.  Whether, as a result of Defendants' misconduct as set forth in this Complaint, Plaintiff Bauser and Class members are entitled to damages, restitution, equitable relief and other relief, and the amount and nature of such relief; and

p.  Whether Defendants have acted on grounds generally applicable to the Class, making injunctive relief appropriate.

63.  <u>Typicality</u>. Federal Rule of Civil Procedure 23(a)(3): Plaintiff Bauser's claims are typical of the claims of the proposed Class's members. Plaintiff Bauser and the proposed Class's members all purchased PMC+ and PMCC units, giving rise to substantially the same legal rights and claims.

64.  <u>Adequacy</u>. Federal Rule of Civil Procedure 23(a)(4): Plaintiff Bauser is an adequate representative of the Class because his interests do not conflict with the interests of the other members of the Class he seeks to represent, Plaintiff Bauser has retained counsel competent and experienced in complex class-action litigation, and Plaintiff Bauser intends to prosecute this action vigorously. Plaintiff Bauser and his counsel will fairly and adequately protect the interests of members of the Class.

65.  <u>Declaratory and Injunctive Relief</u>. Federal Rule of Civil Procedure 23(b)(2): Defendants have acted or refused to act on grounds generally applicable to Plaintiff Bauser and members of the Class, making final injunctive relief and declaratory relief appropriate for the Class as a whole. Defendants engaged in substantially similar conduct for each member of the Class by selling or leasing each member a PMC+ or PMCC and subsequently halving the current it could accept, approximately doubling the charging time, without recalling, repairing, replacing, or otherwise attempting to return the devices to their advertised functionality.

66.  <u>Superiority</u>. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other

financial detriment suffered by Plaintiff Bauser and members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Porsche, so it would be impracticable for the members of the Class to individually seek redress for Porsche's wrongful conduct. Even if members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system itself. By contrast, the class-action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## TOLLING OF STATUTES OF LIMITATION

67.    Any applicable statute(s) of limitations has been tolled by Porsche's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Class could not have reasonably discovered the nature of the defective PMC+ and PMCC until shortly before this complaint was filed.

68.    Porsche was and remains under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality, and nature of the PMC+ and PMCC, that this defect is based on poor manufacturing or

poor design or a combination of both, and that it will require costly repairs or replacement, poses a safety concern, harms the ability of Porsche electric and E-Hybrid vehicle owners to use their vehicles. As a result of the active concealment by Porsche, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

<u>COUNT I</u>
**BREACH OF EXPRESS WARRANTY**
**(Plaintiff Bauser on behalf of the proposed Class)**

69.    Plaintiff Bauser incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

70.    Defendants provided all purchasers and lessees of the PMC+ and PMCC with the same express warranties described herein, which became part of the basis of the bargain.

71.    The PMC+ and PMCC were distributed by Defendants and are covered by the warranties Defendants provided to all purchasers and lessors of PMC+ and PMCC devices.

72.    Defendants breached these warranties by selling and leasing PMC+ and PMCC devices, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements that would return the devices to their advertised safe charging capacity during the applicable warranty periods.

33

73.    Plaintiff Bauser notified Porsche America of the breach within the warranty period. Defendants already knew of the PMC+ and PMCC's overheating issues and yet failed to comply with their warranty obligations to provide consumers with devices that could safely charge as advertised.

74.    As a direct and proximate cause of Defendants' breach, Plaintiff Bauser and the members of the Class bought or leased PMC+ or PMCC devices they otherwise would not have, paid more than they otherwise would have, did not receive the benefit of their bargain, and their PMC+ and PMCC devices suffered a diminution in value. Plaintiff Bauser and the Class have also incurred and will continue to incur costs related to the diagnosis and repair of the PMC+ and PMCC devices.

75.    Defendants' attempts to disclaim or limit these express warranties are unconscionable and unenforceable under the circumstances here.

76.    Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

77.    A gross disparity in bargaining power existed between Defendants and the Class Members, and Defendants knew or should have known that the PMC+ and PMCC devices were defective at the time of sale

34

and could not safely perform at their advertised capacity.

78.    Plaintiff Bauser and the Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

**COUNT II**
**VIOLATION OF THE NEW YORK STATE PROHIBITION OF**
**DECEPTIVE ACTS AND PRACTICES**
**N.Y. Gen. Bus. Law § 349**
**(Plaintiff Bauser on behalf of the proposed Class)**

79.    Plaintiff Bauser incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

80.    Plaintiff Bauser brings this cause of action individually and on behalf of the Class.

81.    Defendants have engaged in consumer-oriented conduct by marketing and selling the PMC+ and PMCC to vehicle and device purchasers and lessees. Their conduct constitutes acts and practices that impose a broad impact on consumers at large.

82.    Defendants' consumer-oriented conduct was materially misleading. Defendants have engaged, and continue to engage, in a systematic campaign of advertising and marketing the PMC+ and PMCC as possessing the capability to safely charge at certain speeds. In connection with the sale and promotion of the PMC+ and PMCC, Defendants

disseminated or caused to be disseminated false, misleading, and deceptive advertising regarding charging capability to the general public through various forms of media, including but not limited to product packaging, product displays, labeling, advertising, and marketing. However, Defendants knew or reasonably should have known that the PMC+ and PMCC could not safely provide the advertised charging capability, that the failure to disclose the reduced safe charging speed to prospective purchasers of the PMC+ and PMCC was a material omission, and that its continued advertising of the PMC+ and PMCC's charging capability was inadequate and factually incorrect.

83.    Defendants' consumer-oriented conduct was thus likely to mislead reasonable consumers, like Plaintiff Bauser and Class members, acting reasonably under the circumstances.

84.    When Defendants disseminated the advertising described herein, they knew, or by the exercise of reasonable care should have known, that the statements concerning the PMC+ and PMCC's charging capability were untrue or misleading, or omitted to state the truth about the PMC+ and PMCC's charging capability, in violation of N.Y. Gen. Bus. Law § 349.

85.    Plaintiff Bauser and members of the Class suffered injury as a result of Defendants' deceptive acts and practices. As a proximate result of

Defendants' conduct, Plaintiff Bauser, members of the Class, and consumers at large, were exposed to these misrepresentations, omissions, and partial disclosures, purchased the PMC+ and PMCC in reliance on these misrepresentations, omissions, and partial disclosures, and suffered monetary losses as a result. They would not have purchased the PMC+ and PMCC, or would not have paid as much, had they known the truth regarding the PMC+ and PMCC's actual charging capability.

86.     Defendants made such misrepresentations even though they knew or should have known that the statements were false, misleading, and/or deceptive.

87.     Defendants acted willfully and knowingly in continuing to market the PMC+ and PMCC as offering a charging capacity that the devices could not safely provide.

88.     There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described above, including the provision of chargers capable of safely providing the advertised charging capacity.

89.     Under N.Y. Gen. Bus. Law §349(h), Plaintiff Bauser and the members of the Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ the practices described above in

advertising the sale of the PMC+ and PMCC. Plaintiff Bauser and the members of the Class ask this Court to order Defendants to make full corrective disclosures to correct their prior misrepresentations, omissions, failures to disclose, and partial disclosures. Plaintiff Bauser and the members of the Class further seek an order of this Court requiring Defendants to provide, at no cost to Plaintiff Bauser and Class Members, PMC+ and PMCC devices capable of safely operating at the advertised charging capacity and/or to reimburse Plaintiff Bauser and Class members the full costs of purchasing the PMC+ and PMCC devices.

90.    Under N.Y. Gen. Bus. Law § 349(h), Plaintiff Bauser and the members of the Class also seek an order of this Court awarding treble actual damages, or in the alternative, actual damages, as well as reasonable attorneys' fees.

**COUNT III**
**VIOLATION OF THE NEW YORK STATE**
**PROHIBITION OF FALSE ADVERTISING**
**N.Y. Gen. Bus. Law §§ 350 to 350-a, 350-e**
**(Plaintiff Bauser on behalf of the proposed Class)**

91.    Plaintiff Bauser incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

92.    Plaintiff Bauser brings this cause of action individually and on behalf of the Class.

93.     Defendants have engaged in consumer-oriented conduct by marketing and selling the PMC+ and PMCC to vehicle and device purchasers and lessees. Their conduct constitutes acts and practices that impose a broad impact on consumers at large.

94.     Defendants' consumer-oriented conduct was materially misleading. Defendants have engaged, and continues to engage, in a systematic campaign of advertising and marketing the PMC+ and PMCC as possessing the capability to safely charge at certain speeds. In connection with the sale and promotion of the PMC+ and PMCC, Defendants disseminated or caused to be disseminated false, misleading, and deceptive advertising regarding charging capability to the general public through various forms of media, including but not limited to product packaging, product displays, labeling, advertising, and marketing. However, Defendants knew or reasonably should have known that the PMC+ and PMCC could not safely provide the advertised charging capability, that the failure to disclose the reduced safe charging speed to prospective purchasers of the PMC+ and PMCC was a material omission, and that its continued advertising of the PMC+ and PMCC's charging capability was inadequate and factually incorrect.

95.    Defendants' consumer-oriented conduct was thus likely to mislead reasonable consumers, like Plaintiff Bauser and Class members, acting reasonably under the circumstances.

96.    When Defendants disseminated the advertising described herein, they knew, or by the exercise of reasonable care should have known, that the statements concerning the PMC+ and PMCC's charging capability were untrue or misleading, or omitted to state the truth about the PMC+ and PMCC's charging capability, in violation of N.Y. Gen. Bus. Law § 350.

97.    Plaintiff Bauser and members of the Class suffered injury as a result of Defendants' deceptive acts and practices. As a proximate result of Defendants' conduct, Plaintiff Bauser, members of the Class, and consumers at large, were exposed to these misrepresentations, omissions, and partial disclosures, purchased the PMC+ and PMCC in reliance on these misrepresentations, omissions, and partial disclosures, and suffered monetary losses as a result. They would not have purchased the PMC+ and PMCC, or would not have paid as much for them, had they known the truth regarding the PMC+ and PMCC's actual charging capability.

98.    Defendants made such misrepresentations even though they knew or should have known that the statements were false, misleading, and/or deceptive.

40

99.    Defendants acted willfully and knowingly in continuing to market the PMC+ and PMCC as offering a charging capacity that the devices could not provide.

100.    There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described above, including the provision of chargers capable of safely providing the advertised charging capacity.

101.    Under N.Y. Gen. Bus. Law § 350-e(3), Plaintiff Bauser and the members of the Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ the practices described above in advertising the sale of the PMC+ and PMCC. Plaintiff Bauser and the members of the Class ask this Court to order Porsche to make full corrective disclosures to correct its prior misrepresentations, omissions, failures to disclose, and partial disclosures. Plaintiff Bauser and the members of the Class further seek an order of this Court requiring Defendants to provide, at no cost to Bauser and Class Members, PMC+ and PMCC devices capable of operating at the advertised charging capacity and/or to reimburse Plaintiff Bauser and Class members the full costs of purchasing the PMC+ and PMCC devices.

102.   Under N.Y. Gen. Bus. Law § 350-e(3), Plaintiff Bauser and the members of the Class also seek an order of this Court awarding treble actual damages, or in the alternative, actual damages, as well as reasonable attorneys' fees.

## COUNT IV
## UNJUST ENRICHMENT
### (Plaintiff Bauser on behalf of the proposed Class)

103.   Plaintiff Bauser incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

104.   Plaintiff Bauser brings this cause of action individually and on behalf of the Class.

105.   The acts and practices described in this Complaint enriched Defendants. Defendants received payments for the PMC+ and PMCC based on their representations and material omissions about the devices' charging capacity.

106.   Defendants received those payments from Plaintiff Bauser and Class members, who purchased or leased the PMC+ and PMCC based on Defendants' representations and material omissions about the devices' charging capacity. Plaintiff Bauser and Class members relied on Defendants' representations and material omissions in purchasing or leasing the charging

42

devices with their vehicles, and Defendants' representations and material omissions induced them to do so.

107.    Because Defendants engaged in deceptive business practices and false advertising, as detailed above, it is against equity and good conscience for them to retain Bauser and Class members' payments. Bauser and Class members paid for PMC+ and PMCC devices advertised as possessing a certain safe charging capacity. Because the devices cannot safely provide that charging capacity, Defendants ought not be permitted to retain the payments they obtained for devices that do not perform as advertised.

108.    Defendants and Plaintiff Bauser and Class members have a sufficiently close relationship for purposes of this claim. Defendants manufactured the PMC+ and PMCC and sold or leased them to Plaintiff Bauser. Defendants were aware of Plaintiff Bauser and Class members' existence, as Plaintiff Bauser and Class members were their customers.

109.    Defendants, having received these benefits, are required to provide remuneration under the circumstances. It is unjust for Defendants to retain such monies obtained by the illegal conduct described above. Such money or property belongs in good conscience to Plaintiff Bauser and Class members and can be traced to funds or property in Defendants' possession.

Plaintiff Bauser and Class members' detriment and Defendants' enrichment are related to and flow from the conduct challenged in this complaint.

110.   Plaintiff Bauser and Class members are entitled to all available restitution and disgorgement of revenues, as it would be inequitable and unjust for Defendants to retain such benefits, and other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

**COUNT V**
**MONEY HAD AND RECEIVED**
**(Plaintiff Bauser on behalf of the proposed Class)**

111.   Plaintiff Bauser incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

112.   Plaintiff Bauser brings this cause of action individually and on behalf of the Class.

113.   The acts and practices described in this Complaint caused Defendants to receive money belonging to Plaintiff Bauser and the Class Members. Defendants received payments for the PMC+ and PMCC based on their representations and material omissions about the devices' charging capacity. Defendants received those payments from Plaintiff Bauser and Class members, who purchased or leased the PMC+ and PMCC based on

Defendants' representations and material omissions about the devices' charging capacity.

114.    Defendants benefited from receiving those payments because they profited from them.

115.    Because Defendants engaged in deceptive business practices and false advertising, as detailed above, it is against equity and good conscience for them to retain Plaintiff Bauser and Class members' payments. Plaintiff Bauser and Class members paid for PMC+ and PMCC devices advertised as possessing a certain safe charging capacity. Because the devices do not in fact possess that charging capacity, Defendants ought not be permitted to retain the payments they obtained for devices that cannot safely perform as advertised.

116.    Defendants, Plaintiff Bauser, and the proposed Class have a sufficiently close relationship for purposes of this claim. Porsche manufactured the PMC+ and PMCC and sold or leased them to Plaintiff Bauser and the proposed Class members. Defendants were aware of the existence of Plaintiff Bauser and the proposed Class members, as they were their customers.

117.    Defendants, having received these benefits, are required to provide remuneration under the circumstances. It is unjust for Defendants to

retain such monies obtained by the illegal conduct described above. Such money or property belongs in good conscience to Plaintiff Bauser and Class members and can be traced to funds or property in Defendants' possession. Plaintiff Bauser and Class members' detriment and Defendants' enrichment are related to and flow from the conduct challenged in this complaint.

118.    Plaintiff Bauser and Class members are entitled to all available restitution and disgorgement of revenues, as it would be inequitable and unjust for Defendants to retain such benefits, and other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

<u>COUNT VI</u>
**FRAUDULENT MISREPRESENTATION**
**(Plaintiff Bauser on behalf of the proposed Class)**

119.    Plaintiff Bauser incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

120.    Plaintiff Bauser brings this cause of action individually and on behalf of the Class.

121.    Defendants have engaged in misrepresentations and material omissions of fact concerning the PMC+ and PMCC. Defendants have engaged, and continues to engage, in a systematic campaign of advertising and marketing the PMC+ and PMCC as possessing the capability to safely charge

46

at certain speeds. In connection with the sale and promotion of the PMC+ and PMCC, Defendants disseminated or caused to be disseminated false, misleading, and deceptive advertising regarding charging capability to the general public through various forms of media, including but not limited to product packaging, product displays, labeling, advertising, and marketing. However, Defendants knew or reasonably should have known that the PMC+ and PMCC could not safely provide the advertised charging capability, that the failure to disclose the reduced safe charging speed to prospective purchasers of the PMC+ and PMCC was a material omission, and that its continued advertising of the PMC+ and PMCC's charging capability was inadequate and factually incorrect.

122.   Defendants made these misrepresentations and material omissions for the purpose of inducing Bauser and Class members to rely on them. Defendants had a vested interest in inducing consumers to purchase or lease PMC+ and PMCC devices and made misrepresentations and material omissions to do so.

123.   Plaintiff Bauser and Class members justifiably relied on Defendants' misrepresentations and material omissions when deciding to purchase PMC+ and PMCC devices. They had no reason to doubt Defendants' statements about the PMC+ and PMCC's capabilities.

47

124.    Plaintiff Bauser and members of the Class suffered injury as a result of Defendants' deceptive acts and practices. As a proximate result of Defendants' conduct, Plaintiff Bauser and members of the Class, consumers at large, were exposed to these misrepresentations, omissions, and partial disclosures, purchased the PMC+ and PMCC in reliance on these misrepresentations, omissions, and partial disclosures, and suffered monetary losses as a result. They would not have purchased the PMC+ and PMCC, or would not have paid as much for them, had they known the truth regarding the PMC+ and PMCC's actual charging capability.

125.    Plaintiff Bauser and Class members are entitled to all available restitution and disgorgement of revenues, as it would be inequitable and unjust for Defendants to retain such benefits, and other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

<u>COUNT VII</u>
**NEGLIGENT MISREPRESENTATION**
**(Pleaded in the alternative to Count V)**
**(Plaintiff Bauser on behalf of the proposed Class)**

126.    Plaintiff Bauser incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

127.   Plaintiff Bauser brings this cause of action individually and on behalf of the Class.

128.   A relationship of privity, or a relationship so close as to approach that of privity, existed between Plaintiff Bauser and Class members and Defendants. Plaintiff Bauser and Class members purchased or leased PMC+ and PMCC devices from Defendants or Defendants' authorized dealerships.

129.   That relationship imposed a duty on Defendants to impart correct information to Plaintiff Bauser and Class members. False-advertising law did not permit Defendants to advertise and market the PMC+ and PMCC as possessing a charging capacity at which they knew the devices could not safely operate.

130.   Plaintiff Bauser and Class members justifiably and reasonably relied on Defendants' misrepresentations and material omissions when deciding to purchase PMC+ and PMCC devices. They had no reason to doubt Defendants' statements about the PMC+ and PMCC's capabilities.

131.   Plaintiff Bauser and members of the Class suffered injury as a result of Defendants' deceptive acts and practices. As a proximate result of Defendants' conduct, Plaintiff Bauser and members of the Class were exposed to these misrepresentations, omissions, and partial disclosures, purchased the PMC+ and PMCC in reliance on these misrepresentations, omissions, and

49

partial disclosures, and suffered monetary losses as a result. They would not have purchased the PMC+ and PMCC, or would not have purchased them at the prices paid, had they known the truth regarding the PMC+ and PMCC's actual charging capability.

132.   Plaintiff Bauser and Class members are entitled to all available restitution and disgorgement of revenues, as it would be inequitable and unjust for Defendants to retain such benefits, and other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

<u>COUNT VIII</u>
FRAUDULENT CONCEALMENT
(Plaintiff Bauser on behalf of the proposed Class)

133.   Plaintiff Bauser incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

134.   Plaintiff Bauser brings this cause of action individually and on behalf of the Class.

135.   Defendants have engaged in misrepresentations and material omissions of fact concerning the PMC+ and PMCC. Defendants have engaged, and continues to engage, in a systematic campaign of advertising and marketing the PMC+ and PMCC as possessing the capability to safely charge at certain speeds. In connection with the sale and promotion of the PMC+

and PMCC, Defendants disseminated or caused to be disseminated false, misleading, and deceptive advertising regarding charging capability to the general public through various forms of media, including but not limited to product packaging, product displays, labeling, advertising, and marketing. However, Defendants knew or reasonably should have known that the PMC+ and PMCC could not safely provide the advertised charging capability, that the failure to disclose the reduced safe charging speed to prospective purchasers of the PMC+ and PMCC was a material omission, and that its continued advertising of the PMC+ and PMCC's charging capability was inadequate and factually incorrect.

136.   Defendants made these misrepresentations and material omissions for the purpose of inducing Plaintiff Bauser and Class members to rely on them. Defendants had a vested interest in inducing consumers to purchase or lease PMC+ and PMCC devices, and made misrepresentations and material omissions to do so.

137.   Plaintiff Bauser and Class members justifiably and reasonably relied on Defendants' misrepresentations and material omissions when deciding to purchase PMC+ and PMCC devices. They had no reason to doubt Defendants' statements about the PMC+ and PMCC's capabilities.

138.    Plaintiff Bauser and members of the Class suffered injury as a result of Defendants' deceptive acts and practices. As a proximate result of Defendants' conduct, Plaintiff Bauser and members of the Class, were exposed to these misrepresentations, omissions, and partial disclosures, purchased the PMC+ and PMCC in reliance on these misrepresentations, omissions, and partial disclosures, and suffered monetary losses as a result. They would not have purchased the PMC+ and PMCC, or would not have purchased them at the prices they paid, had they known the truth regarding the PMC+ and PMCC's actual charging capability.

139.    Defendants had a duty to disclose the PMC+ and PMCC's reduced safe charging capability in its advertising and marketing, but it failed to do so. False-advertising law did not permit Defendants to advertise and market the PMC+ and PMCC as possessing a charging capacity at which they knew the devices could not safely operate.

140.    Defendants knowingly concealed the devices' reduced safe charging capability by failing to change their advertising and marketing materials to reflect the truth about that capability.

141.    Plaintiff Bauser and Class members are entitled to all available restitution and disgorgement of revenues, as it would be inequitable and unjust for Porsche to retain such benefits, and other remedies and claims

may not permit them to obtain such relief, leaving them without an adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Bauser, individually and on behalf of members of the Class, respectfully request that the Court enter judgment against Defendants and in favor of Plaintiff Bauser and the Class, and award the following relief:

A.    Certify this action as a class action under Federal Rule of Civil Procedure 23, appoint Plaintiff Bauser as a Class representative, and appoint Plaintiff Bauser's counsel as counsel for the Class;

B.    Enter an order requiring Defendants to immediately cease the wrongful conduct as set forth above; enjoining Defendants from continuing to conduct business via the unlawful and deceptive business acts and practices complained of herein; ordering Defendants to engage in a corrective-notice campaign; and Defendants to provide, at no cost to Plaintiff Bauser and Class Members, PMC+ and PMCC devices capable of operating at the advertised charging capacity and/or to reimburse Plaintiff Bauser and Class members the full costs of purchasing the PMC+ and PMCC devices.

C.     Enter judgment against Defendants for restitution, including disgorgement of profits received by Defendants as a result of said purchases, cost of suit, attorneys' fees; and injunction; and

D.     Grant such other equitable relief and pre- and post-judgment interest as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff Bauser demands a jury trial for all claims so triable.

Dated: March 10, 2023

**WEBB, KLASE & LEMOND, LLC**

*/s/ G. Franklin Lemond, Jr.*
E. Adam Webb
  Georgia Bar No. 743910
G. Franklin Lemond, Jr.
  Georgia Bar No. 141315

1900 The Exchange, SE
Suite 480
Atlanta, Georgia 30339
(770) 444-9325
(770) 217-9950 (fax)
Adam@WebbLLC.com
Franklin@WebbLLC.com

William H. Anderson *(pro hac vice forthcoming)*
**HANDLEY FARAH & ANDERSON PLLC**
5353 Manhattan Circle
Suite 204
Boulder, Colorado 80303
(303) 800-9109
(866) 912-8897 (fax)
wanderson@hfajustice.com

Simon Wiener *(pro hac vice forthcoming)*
**HANDLEY FARAH & ANDERSON PLLC**
68 Harrison Avenue
Suite 604
Boston, Massachusetts 02111
(202) 921-4567
(866) 912-8897 (fax)
swiener@hfajustice.com

Matthew D. Schelkopf *(pro hac vice forthcoming)*
Joseph B. Kenney *(pro hac vice forthcoming)*
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
(610) 200-0581
(610) 421-1326 (fax)
mds@sstriallawyers.com
jbk@sstriallawyers.com

Brian W. Warwick (*pro hac vice forthcoming)*
**VARNELL & WARWICK**
1101 E. Cumberland Avenue
Suite 201H-105
Tampa, Florida 33602
(352) 753-8600
bwardwick@vandwlaw.com

*Attorneys for Plaintiff*